And go on to the last case on the calendar, please. Grassley v. United States District Court, 24-94. Grassley v. United States District Court, 24-94. Whenever you're ready, counsel, we are ready. Good morning, Your Honors. May it please the Court, my name is Esther Bilesma and I represent Petitioner Troy Crossley and with me today is my colleague, Andrew Weaver. I'd like to reserve five minutes for rebuttal. This petition presents a narrow but important issue. The California- That's like an up front that I think might help frame, and I hate to interrupt your start, but I think this might help to know like how broad or how narrow our review is. I believe the other side says, you know what, even if the District Court judge was wrong, there's these other reasons why we win, you know, the law would be preempted, etc., right? And then I think your response, as I understood it, was that's not what's before this court. What's before this court is the narrow issue of whether the District Court judge is right. But you are seeking mandamus relief, which is a really extraordinary remedy. And so it's hard for me to see how, why, if I thought the judge was right about, you know, the judge's outcome was correct, but the reasoning wasn't necessarily correct, why would I ever grant mandamus relief? And if that's the case, then, because it's such an extraordinary remedy. So why isn't all, you know, if somebody can come in and say, you know, the judge was right but for the wrong reason, then that seems to be a pretty strong argument against us granting this extraordinary remedy of mandamus relief. And if that's the case, then it seems to me like any argument is potentially before us. Can you address that for a second, because then it kind of, the reason I wanted to ask that up front is I wanted, and I'm sorry it took so much time, but I wanted to know like, do we, don't we have kind of all the issues that the other side has thrown at the wall on this? Yes. So the issue here, the order that we're asking this court to review on that is clearly erroneous is the misapplication and the misconstruing of section 1281.98. The trial court here never reached the issues and the real party of interest here has raised a lot of arguments regarding whether the FAA applies, whether the FAA preempts the statute at issue, but those arguments have never been actually considered by the trial court in its order. The trial court stopped at the first door, just at the misapplication of the CCP statute. And so that's the issue that's in front of this court. Now, if this court were to, what's the issue that, I mean, in order for us to reverse, we would have to find, we'd have to consider all the Bauman factors, right? Yes. Okay. So what's your strongest Bauman argument? It seems to me, I agree with Judge Van Dyke, that's, I think you have to go straight to that because this is an extraordinary remedy and you're asking us to say that here. So what's your application of the Bauman factors, please? So the strongest and the first factor that we address is the clearly erroneous order. Again, when we're looking at the statute that is at issue, the point of the whole statute was that the California legislature wanted to bring order and clarity to arbitration procedures. It found that ambiguities in payment deadlines were causing arbitrations to be seriously delayed. And so it addressed that problem specifically by implementing, among other things, the statute at issue, section 1281.98, and that's designed to be a simple, clear, bright line rule. It's language is unambiguous. When an arbitrator issues an invoice- But how could it be clearly wrong here? Because my understanding is, even giving you all of that, my problem is that my understanding of the facts is that there was a deadline. The parties voluntarily agreed to mediate. That mediation was unsuccessful, right? They came back sort of online to proceed with the arbitration. At that point, the deadline was fuzzed up. A receipt was issued that said, I think, due immediately or due upon receipt. I mean, invoice was issued that said due immediately. That's my paraphrase. And so it seems to me at this point, what the district court was relying on was that there wasn't a clear, bright line deadline. Had there been, then I think we'd be talking about the statute straight up, and there's a strong argument that the statute was intended to actually facilitate arbitration. But how do we get past this factual congestion? So the statute, to be strictly applied, all it requires is that there was an invoice, that that invoice says that it's due upon receipt, and that invoice was not paid in 30 days. Well, but you're skipping the first part of it. First, it was going to be 60 days out. The first deadline was 60 days before the arbitration, right? This arbitration was rescheduled. So, and Your Honor is referring to the scheduling order, okay? There are three things wrong with that argument. First, if you actually look at the wording of the scheduling order, it wasn't an actual deadline. The scheduling orders, the language is much softer. It says the parties are requested to deposit fees sufficient to compensate the arbitrator for the scheduling hearing 60 days in advance. And that's at docket entry 2.1 at page 61. But what it also is, it's not recognizing sort of the payment structure that happens in arbitrations. What happens is that at the beginning, the arbitrator had issued a scheduling order saying, this is when I want all final payments made by. This is the end date. 60 days before the hearing, he's requesting that all fees are paid at that time. Now, there are also interim payments that happened before that. And we understand that because it says that under the JAMS rule 31, and we have that at docket entry 2.1, page 10109. JAMS requires that parties deposit the fees and expenses for the arbitration from time to time during the course of the proceedings and prior to the hearing. And we also know this because it's in the CCP statute at issue as well. There's two parts to it. There's one that contemplates, here's this payment that you have to make at the beginning to start off the arbitration. And then there are interim payments that you have to make. So the scheduling order first said, here's the end date. We're requesting that all fees are paid by that end date. And then you have an invoice that's issued a year after that scheduling order that says, OK, now here's the invoice. And this invoice is due upon receipt. So were they supposed to pay it instantaneously? Yes, it was due upon receipt. That date that you're reading? It was due upon receipt, and they had to pay within 30 days under the statute, or else that statute strictly applied means that they were in material breach under the statute. When did the material breach happen? You've emphasized due upon receipt. Do you think the material breach happened 30 days later? Yes, according to the statute. And so that's why the trial court order is an error. It's because that's the clear rule. Those are the undisputed facts here. There's an invoice and a lack of payment. And with those simple facts, you have to find a material breach under the statute. Let me ask a somewhat more basic question. This is an arbitration to which the parties agreed under the Federal Arbitration Act, right? Parties agreed that they would arbitrate under this. Is that right? Or is that not right? So that is not right. There's a bunch of arguments here. And again, I would like to say that these are all arguments that should be... Our position is that all of these arguments should be presented to the trial court first. I'm going to ask you, what is the circumstances, the law under which the parties agreed to arbitrate? Didn't the parties agree that they would arbitrate under the Federal Arbitration Act? So the parties... Can you answer that yes or no? Our position is that the FAA does not apply. Well, there's nothing in the contract or agreement that mentions the FAA? Yes, but our position is that... And this is particularly in light of this court's, the Ninth Circuit's opinion. And this was just a few months ago in March 2024. And again, this is an argument that we weren't able to provide to the trial court. Well, if the FAA doesn't apply, what does apply? What applies is the statute, CCP 1281.98, because... Well, state law? Parties agreed to arbitrate under state law. Is that what you're saying? But by its plain language, the CCP applies to all arbitrations in California, employment arbitrations in California. Your answer is quite confusing to me. You can't give me an answer, you know, one way or the other, can you? Whether the parties agreed to arbitrate in the FAA or the California Act. Can you point to an agreement between the parties and what they agreed to arbitrate under? The reason I'm asking that is, if this is an agreement to arbitrate under the FAA, how do you get to the application of the California statute on the time and list of payment? How does that apply under the FAA, is my question? So I think there are two points there, right? At least two points, maybe more. Yes. First, even if the FAA applies, it doesn't mean that the CCP doesn't apply. Courts have found that both can coexist at the same time. And then you get into the whole preemption analysis, right? You have to look at, well, does the statute, does the California statute conflict with or obstruct the purposes of the FAA? And the courts that we've cited have, virtually all have come across this line and said the CCP statute is not preempted by the FAA. Not all of us have reached that result. And this Judge Toshima's question takes you right back to where Judge Van Dyke started, which is, it's not that clear cut. It's not resolved. And for Mandamus, that's what it would need to be. Can I ask, well, I know you wanted to have five minutes, I think, but just to follow up on Judge Toshima's point, make sure I understand that you're answering the question that I think he maybe was asking. But if there had not been, if you didn't think there'd been any sort of breach here of this type, right, like if they hadn't blown the deadline under your view, is your view that this would not be covered by the FAA in that instance? So I'm trying to figure out, is your answer to Judge Toshima's question that no, the FAA doesn't cover this CPC 1281, 97, 98? Or is your answer that like this arbitration is not covered by the FAA at all, period? Like, let's assume that there had been no such breach in this case. What's your answer to that? Okay, so... Would the FAA, let me ask this simply, would the FAA cover this if none of these blown deadline things were in the case? No, the FAA would not because the plaintiff here was a warehouse worker. And under recent authority by this court, because he's a warehouse worker, he is subject to a special warehouse exemption. And that's the Ortiz case. I think I had a case like that that I maybe wrote. Yeah, so I know what you're talking about. Okay. Right. So your view would be that this would not be covered. It's under that exception, whatever that one exception is. Right, exactly. And these are all arguments that we would make to the trial court. So this is how we would see it, right? Here's an order. It's clearly erroneous because the trial court misapplied a clear-cut rule. If this court sets aside that order, then what we do is we go back to the trial court, and then the trial court now has to address all these other issues. Now the trial court has to address... To what I said then, Judge Kristen, but the problem is, under your view, you'd be mandaming this, and we'd just be bouncing back and forth for your claim split. You're splitting everything up into multiple questions. And so I don't think we normally use mandamus that way because it ends up being inefficient and a waste of time, and it's supposed to be an extraordinary remedy. So it's like a vehicle problem when you go to the Supreme Court. If you've got these other lurking issues in the background, it makes it a much less attractive vehicle for us to decide this discreet legal issue that you want us to decide. Well, and our response to that is that it's still important for this court to address the district court's erroneous order because what that order does, it does create disorder by taking what should be a clear-cut rule. And a way to think about it is, if we look at the California Court of Appeals opinions that we've cited, the Espinoza case, the Doe case, the Rinoza case, there, the California Court of Appeals did issue writs in order to tell the lower courts, this is not how you apply the rule. The rule is specifically there to create order, to create this clear way to decide whether payments were missed or not. And so when courts did something more than that, when the trial courts did something more than that, when they looked at outside factors that they're not supposed to, when they looked at, you know, what are the reasons why they missed a date, is there a dispute here whether they missed a date or not, the Court of Appeals, the California Court of Appeals stepped in and said, no, that's not how you apply the rule. This is how you must apply the rule. The rule must stay this way because there's a point to this. Are we obligated, do we have precedent that stands for the proposition that we apply writs of mandamus in the same way or with the same standard? I think those examples give good, go to the Bowen factor in terms of, in terms of why it's important and why it's potentially like a repeated error. But this is our standard and we're obligated to apply it, right? It's not an off-repeated error, is it? Well, it is an off-repeated error in, in the state courts, in the trial courts, but under the Bowen factors and we have to... Is there, is there, is that in the record that it's an off-repeated, would you say in the state of California, in the state courts? What you said, it's off-repeated in the state courts. What about the federal courts? Well, in the federal courts... I mean, is there something in the record on that? Not, I don't think that we have a specific example that's coming off the top of my head in the federal courts. Well, what about, you have, is this, you have something on the state courts? Is that in the record? Yes. So those three cases that I just mentioned, the Espinoza case, the Doe case, there's their... The state appellate court cases? Right. Those are all where the trial courts misapplied that statute and the court, the California Court of Appeals there issued a writ. So here, again, I like to... Given those cases, why do you say it's still an off-repeated error? Well, because... Those cases have not been disregarded or what? What's the reason for that? They have been disregarded by the district court here. And that's the issue. Oh, by the state courts. We're talking about state courts. No, those cases have not been disregarded. I mean, those cases have not been disregarded. But I think the point there is when the trial courts have misapplied the bright line rule there, the California Court of Appeals have stepped in. Because what they're trying to do is make sure that that statute is applied in a way that the California legislator wanted, in a clear-cut way. And so our argument is that that is also a reason why this court should step in, make sure that if a district court in this district applies that statute, it applies a bright line rule test the way that it's supposed to do. I understand. And we appreciate your argument. And you're way over time. So I'm going to ask you to stop there. When you come back, we'll give you two minutes. Thank you, Your Honor. You bet. We'll hear from opposing counsel, please. Thank you, Your Honor. May it please the Court. My name is Michael Nelson. I'm here with my colleague, Greg Iskander. We represent the defendants and real parties in interest, Manpower U.S. Incorporated and Keen and Nagle Incorporated. I'd like to start by directly addressing the very first question by the court, which was how broad or narrow is the court's standard of review here? As the court is well aware, the court can affirm the order on any ground that has support in the record, whether or not the district court reached its decision on the same grounds or reasoning. And not only was the lower court correct on the factual analysis that it conducted, but there are additional threshold questions, which were not even reached by the court, which also would dispose of this writ summarily. When you say the court was correct on the issue of this whole business about the timeliness of the payment and so forth, didn't the district court say, well, the arbitrator set several different deadlines, so the statute doesn't apply? Isn't that more or less what the trial court said? Something like that? Yes, Your Honor. In a way, the district court said that there was a dispute over what the due date was. And that is really the thrust of the statute here. Opposing counsel says there wasn't a dispute. It depends on how you read the record, doesn't it? In other words, the statute reports to the invoice, and the 60 days was not in an invoice, was it? It was in some kind of trial setting order or something like that. Correct. Shouldn't that just be disregarded? I mean, the statute specifically addresses an invoice, and an invoice was sent, right? It says payment due on receipt. An invoice was sent. However, the parties had already agreed to use a different deadline, and that deadline was set. But that's not an invoice, and it was not agreement. It has to be by agreement. Two things to address both of those points, Your Honor. Number one, there seems to be some confusion in terms of whether an invoice is the only way an arbitration fee can be set. That's all the statute mentioned, isn't it? No, Your Honor. That's not correct. The statute provides a default to make sure that the arbitration proceedings are moving along an invoice will issue, and it will have this sort of boilerplate language. However, the statute contemplates that there are other deadlines that could apply, whether by way of a specific language in an arbitration agreement, or because the parties agree to use different dates. And in this case. Only if the parties stipulate to it. There's no language related to stipulation. It just says whether the parties agree to use a different date. And at the very beginning of this case. How did they agree to different dates here? I'm sorry? How did the parties agree to different dates here? At the commencement of the arbitration, the parties held the case management conference, and after that case management conference, there was a scheduling order that was issued. The order comes from the court, not from the parties. Parties didn't agree. It was forced upon them by the court. I disagree that it was forced upon them. Is there a record that says we stipulate to that? There's no explicit record saying that there's a stipulation. There's no record at all. There's a record indicating that this is what came out of this initial conference. Right. What should happen in conferences? You know, parties take their position. The court makes an order. That's not an agreement of the parties. It's an order of the court. In the context, perhaps, of a motion. Not of a scheduling conference. Not of an initial case management conference. What difference does it make? You know, I mean, with trial, judge, issues in order, and orders in order. It's not an agreement. No, I'm looking at the statute. Should I be looking at 1281.98 AA2? It's a good question. Yes, and it's the 81.98. Although the 81.97, Your Honors, as you may know, is a sort of sister statute that's analyzed similarly. How about if you go to 81.982, right? That talks about the arbitrator shall provide an invoice. The void delay absent in a provision in an arbitration agreement stating the number of days in which the arbitration must pay any required. So this is the language I thought you were referring to. Are you referring to a different language? I'm referring to that language in there states that it has a procedure, a default procedure, of issuing an invoice. But it also has language in there that states that the parties can essentially agree to other dates. I just read to you. And what is it? Yes, that's what you're relying on, I think. Correct. Am I misunderstanding? Correct, that is the situation here. There's no evidence in the record, in this court's record, that indicates that the petitioners ever objected to any setting of any deadlines related to. Let's talk about objection. If you can circle back. I'm just trying to get you back to Judge Toshima's question. The first part of this statute says, the arbitration provider shall provide an invoice for any fees and costs required for the arbitration proceeding to continue. The next sentence, the invoice shall be provided in its entirety, just like the full amount, due when it's due. But then the third sentence says, to avoid delay, absent an express provision in the arbitration agreement. And I think what we're talking about in this case is that there was a scheduling order issued pursuant to the arbitration agreement. But I don't, you've now confused me about which prong you're relying on. So I want to be sure. Your Honor, it's actually about a sentence later, or two sentences. It says, any extension of time for the due date shall be agreed upon by all parties. Yes, but what I'm talking about is not an extension. You had an original agreement. It wasn't an extension. You had an original date, right? And it wasn't pursuant to an arbitration agreement. I think it's a scheduling order issued by the arbitrator. Isn't that right? That's correct. And so your position, I think, is that we should take that as an original order pursuant to the arbitration agreement. I don't know if it is or not, but I think that's what you're asking us to assume. And there wasn't a subsequent agreement. And then there was an invoice, right? I want to make sure we have the facts correct. And the invoice said due upon receipt. So that's somewhat correct, Your Honor. I would clarify a couple of things. Number one, the parties did agree in the arbitration agreement to essentially provide this arbitrator with jurisdiction over this case to follow his orders. We also stipulated to use the jams rules. And all of those rules provide arbitrator authority to set dates. Now, really where the conflict comes in is a situation where an arbitrator might change a date after the fact, which would go directly against the thrust and purpose of this statute, where they would basically extend a due date, giving a party a second chance. That is certainly what did not happen in this case. I just explained in summary form what I think happened, and you said that's somewhat correct. What is it you think I'm missing? Well, I wanted to clarify, there's no express provision, Your Honor, in the arbitration agreement that says, here's what the due dates are. By extension, however, the arbitration... I didn't suggest otherwise. But okay, go ahead. Okay, I apologize if I'm misunderstanding. I'm just trying to have clear communication, that's all. Okay. So... In response to Judge Teshima's question, you are relying on what? We are relying on, number one, the arbitration agreement does provide the arbitrator with essentially authority over this arbitration, including the authority to set dates in this case, which may include setting fee deadlines, number one. Number two, more explicitly, there was an agreement here by this scheduling order at the very commencement of the case, and I think that's critical here, setting a different date. Okay, so Judge Teshima was calling your attention to this provision that I've just gone over. The arbitration provider shall provide an invoice. All right, the arbitrator did that, and that's what opposing counsel is relying upon. And your response... And she says within 30 days of that, the payment was not made, and you're relying on what exactly? We are relying on the later part of that same statute, 1281.98A2, which says that any extension of time for the due date shall be agreed upon by all parties. So while there is an invoice in the statute, the parties can agree to different dates, and that's what happened here. At the very least, there was a critical dispute about what the due date is here, and I think that is a critical factor here. We go to one of the court's comments about off-repeated error. Petitioner's counsel does not have a single case site that reflects the factual circumstances of this case. Every other case, primarily California case, cases have dealt with this issue, have dealt with situations where there was no dispute in the first place about what the due date was. And in those cases, it was conceded that the payments were late, and then the parties were seeking some sort of extension or exception from the court because of inadvertence or a mistake or because there was no prejudice. None of that happened here. That was not the case. There was no mistake. This, the payment that was made by Manpower, timely, was made pursuant to the very initial arbitration order, which was not objected to by plaintiff's counsel. And in fact, the case proceeded for a year and a half after this initial scheduling order. It deals directly with just the hearing deposit. It does not deal with every fee. It says the hearing deposit. It's very specific, much more specific. So you're saying that your client was free to disregard the invoice? We looked at the invoice, Your Honor. No, it was not free to disregard it in a sense, but when weighing a conflicting order where the parties have already agreed, the arbitrator's order governed in that circumstance because the default rule of this invoice 30 days didn't apply. And quite frankly, that appeared to be a mistake by the arbitration provider because it conflicted with the arbitrator's earlier ruling. And to go to Your Honor's point earlier, this payment due upon receipt, arbitration fees, as the court may know, are substantial. There's good reason why arbitrators set these deadlines occasionally at the beginning of the case to provide clarity about the payment timing, the amount of the payment, so that the parties can plan, so that they can plan to make a substantial payment. I'm not sure you're in a great position to say that the rationale is clarity because these were both issued by the arbitrator, right? And you're telling me that you thought, your client thought he didn't have to pay within 30 days of the invoice. Your Honor, I would say that the second... That's the opposite of clarity. The second invoice was issued by the provider in some sort of auto-generated letter. The first invoice, not only was it issued by the arbitrator, but there was language in there that said that the order shall not change without further order by the arbitrator. And I think that's also a critical distinction. But, Your Honor, Your Honors, I do want to mention two key points. Threshold issues... So, I know you're running out of time, but you chewed up most of your time because you came in and you said it was clear. It's not clear. Like, if I was an associate and walked in your office and said, oh, I just discovered that we've got an order from the arbitrator and we've got an invoice and I told you everything that we all know now, you'd have been like, hmm, this is interesting. I don't know which is our due date. At best case scenario, you would have been like, oh, it's super clear. We've got to pay off of the order and not off the invoice. And so, it's not clear. But the good news for you is it doesn't have to be clear. Lack of clarity works in your favor because part three of the bound factors is the district court's order has to be clearly erroneous, right? You see what I'm saying? So, maybe you should focus on that, not that the district court was clearly right, but that he wasn't clearly wrong. And even if he was clearly wrong on this, like, there's so many other ways to skin this cat and this doesn't happen all the time. And the state courts will, if this turns out to be a problem, the state courts will fix it. We don't have to step in as a federal court and figure out what this answer to this esoteric state rule is. It seems to me like those would be helpful arguments rather than focusing for 12 minutes on the fact that what the district court's interpretation was super clear and the only right interpretation. Your Honor, I agree with that point in the sense, once again, that there's no case on point that deals with this situation where we're dealing with an earlier set deadline and there's a fundamental dispute about the due date. And to speak to the state courts of California, you're right that this issue is an issue for them in the sense that the California Arbitration Act does not apply to this case. As we pointed out most recently in a supplemental letter raising the Hernandez case, a California appellate case, which has relevant and instructive analysis for this court, that Hernandez decision, which also tracked an earlier district court decision, the Beleria case, held first that the California Arbitration Act did not apply where the agreement was governed by the FAA. And this agreement is explicitly governed by the FAA. Petitioners' counsel is raising for the first time saying that the FAA doesn't apply. That was not in their petition or their reply brief. They only argued that the FAA was not preempted. They cannot raise that issue for the first time here. In our case, we have an arbitration agreement explicitly saying this is governed by the FAA and the scheduling order confirms that the parties agreed that the FAA will apply. This case was filed in federal court, not state court. The California Arbitration Act does not apply here. The parties did not agree to adopt those procedural rules. His answer raised a question. Can I? Of course, you're out of time, but please answer Judge Tshishima's question. All right. Now, if the FAA applies, does that mean that, I forgot the section number of the statute, but does that mean this California statute does not apply? That's correct, Your Honor. This statute would not apply. The parties did not agree to adopt California Arbitration Act or the California procedural rules. Even though everybody depended upon this in the district court? I'm sorry, Your Honor? Even though everybody seemed to accept that this statute applied in the district court. Isn't that true? I disagree. Manpower and Keenan Ailes certainly did not agree that the statute would apply. Now, the district court reached its conclusion on a different ground, but we argued not only that it does not apply, but it is preempted as well, which is an entirely other reason because it violates the equal treatment principle. Thank you for your argument. Thank you. Counsel? Thank you, Your Honors. There was no agreement here for an extension of the time of the due date. And we know this because there's no dispute that there was no express agreement. And the argument is that there was some sort of implicit agreement because the petitioner, Mr. Crossley, did not object to the scheduling order. One, the scheduling order didn't actually set dates. It was a request. Two, if silence... Can you say that first part? Scheduling order didn't actually what? Wasn't... Didn't order a deadline. What it was was a request that all fees will be paid by this end date. Okay. Number two, silence isn't sufficient to be in agreement. And we know this because there are cases where... That part, I'm a little more sympathetic to the other side, only in the sense that, you know, we normally, like, if you were to come in a year later and say, we didn't like this date for our one brief or whatever, and we were like, well, why didn't you object to it when the scheduling order came out instead of, you know, a long time later? So there does seem to be a sense in which these preliminary matters that are addressed in a scheduling order, that doesn't seem to be crazy to me to have an object now or waive it sort of concept. And ultimately, that would be something that state courts would decide, I guess, but how that affects. But that doesn't seem so crazy to me. Why is that a crazy idea that you sort of implicitly acquiesced in it by not saying, by not raising something? It is because, again, we're dealing with a bright line rule and we have cases, like we have the Espinoza case. You have there where they missed a deadline, but they continued on. They had settlement discussions. And the court said that doesn't matter because still we're applying a bright line rule. The triggering event is the non-payment of the invoice. That's all that matters. And actually, there's a recent case that came out in the California Court of Appeals. This was just in May, last month. So it wasn't cited in our papers, but that issue was specifically in that case. Silence or the failure to object to a proposed later payment deadline, whether that was a sufficient manifestation of intent by a consumer or employee to find an agreement to extend the payment deadline under the statute. And the court there specifically said no. The agreement has to be direct. It has to be explicit. So let me make sure I understand. In that circumstance, is that a circumstance where they say the deadline is, you know, this is when the payment is due. Somebody blows the deadline and then says, well, we never agreed to that deadline because we didn't explicitly agree to it. Is that, is it, because that's a little different if it's that type of situation. The facts there in the case that I just referred to were that there were several invoices that were paid and the defendant was making partial payments while the invoices were issued. And while they hadn't fully paid the invoices at a certain point, the arbitrator provider came in and said, or the arbitrator or the arbitrator provider issued a letter that said, okay, we want everything to be paid by this end date. And so the argument there was that nobody said anything. The other side didn't object, silence. And so everyone agreed that everything would be due at this later date. And the court of appeals stepped in and said, no, silence is not a sufficient indicator of agreement. It has to be direct. And here it wasn't direct. And the other point is that the scheduling order that we're talking about, it wasn't even in effect later because it was revised and replaced by a different scheduling order, a second amended scheduling order. So that's argument number two. And number three, the statute exposes, the case law also says that the arbitrator is not entitled to modify the scheduling dates, right? It has to be an agreement by both sides. And you are, I'm going to ask you to wrap up your, I said you could have two minutes. You've taken four. Yes. Thank you, Your Honor. And just really quickly, the point is that the trial court here never found that there was an agreement. And so that's an error because if the trial court did find that there was an agreement, that there was a modification, then we're talking about a different application of what he did here. What he did here, he didn't find any sort of agreement. He misapplied the statute. And that is why we're asking for a writ today. Thank you. Thank you for your argument. Thank you for your patience with our questions, both of you, all of you. We'll take that case under advisement and we'll stand in recess. Okay. All rise.
judges: TASHIMA, CHRISTEN, VANDYKE